The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. We're ready to proceed, Your Honor. Okay. Thank you and good morning, everyone. And so the first argued case on this line is number 19-1937, Mobil Technology, Inc. v. Sennco Solutions, Inc. So, Mr. Norman, proceed. May it please the Court. After the first issue, the Board erred in failing to find claims 5 and 8-12 obvious in view of Seabrook and Rabinowitz. Mr. Norman, this is Judge Wallach. As a housekeeping matter, is independent claim one illustrative or representative? Independent claim one is a bit illustrative. I mean, claim five depends from claim one, and the Board found claim one of the 809 patent to be obvious based on the Seabrook reference. Sennco did not appeal that finding, so the obviousness of claim one is not at issue. And a lot of the limitations that are in claim one are also in independent claim eight. But with respect to claim five, then we're looking at only some additional limitations because it depends directly on claim one. The only reason given by the Board in refusing to find claim five obvious is based on the Board's mistaken understanding of the scope of claim five. Claim five requires a plunger that triggers an alarm. The Board did not conclude it would be obvious. Mr. Norman, this is Judge Wallach again. In the blue brief at 14, you argue that it would have been obvious to add a plunger to Seabrook's head unit, and so render claim five obvious. And your position is that the PTAB ignored your expert testimony in the prior arc. But aren't you asking us to reweigh the evidence on that? Well, no, because our point is that what the Board did decide, the Board ignored evidence, the Board ignored a lot of the issues, but the issues that the Board did address, the Board was incorrect on. So if we at least look at what the Board decided, we can address that and see that what the Board decided was incorrect, and so the case should be reversed on that ground and remanded. So what the Board did not conclude, the Board didn't conclude that it would be unobvious to add a plunger switch to activate an alarm in the head unit of retail theft prevention device. Instead, the Board asserted that putting Rabinowitz's plunger switch in Seabrook's head unit would not work when the Seabrook head unit is in the third position, that is, when the head unit is disconnected from the base. Well, again, this is Judge Wallach. In the red brief at 18, Zenko argues that the combination of Seabrook and Rabinowitz wouldn't function. What evidence did you present to the PTAB that it would function? Okay, well, first of all, that was the first time that Zenko made that argument. Zenko did not make that argument to the Board, and that's not something that the Board decided. But the whole aspect of it would not function, and I want to make sure that I'm hitting the right point, and I'm understanding the particular position that we're being addressed. But as far as the not function, it would have functioned if we put a plunger switch into the head unit, and we had that in Appendix 901 to 902 is the testimony of Dr. Cameron. Claim 5 doesn't require the plunger switch to operate in every position of the head unit. It doesn't require the plunger switch to operate in the position addressed by the Board. The only reason given by the Board against the obvious of Claim 5 is based on Seabrook and Rabinowitz, that the limitation is not present in Claim 5. So, Seabrook does not require that the plunger switch operate in that third position of the head unit. See, I thought the issue with respect to Claim 5, and correct me if I'm mistaken about this, was that the Board found that there wouldn't be an electrical connection in the third position that would trigger the alarm. Is that correct? Well, there wouldn't be an electrical connection that's going to trigger the alarm in the third position in either device. Correct. I think that is what the Board decided. Wait, wait. What I'm asking you is what's the Board's rationale here, which is what we're reviewing. My understanding is that what the Board said with respect to Claim 5, and I'm mistaken about this, is that there wouldn't be an electrical connection in the third position that would trigger the alarm. Is that correct? I think that is correct. I think that's what the Board decided. All right. And your response to that is you said you could have a battery, right? Well, the battery would be one option, yes. Yes, but we have two positions. One is... Now, wait. Stick with this one, okay? You'll have time to see the other ones. On this question, the Board did not mention the battery possibility, even though you had evidence that there was the motivation to use a battery to trigger the alarm, right? That is correct. Okay. And my understanding is that the patentee responds to that by saying that... the response to that by saying that that was raised for the first time in your reply and that that wasn't a proper reply. That is not a position that the Board took, correct? That is correct. Okay. So what's your response to the patentee's position that you shouldn't have raised this for the first time in the reply? Okay. So our response to that is, first of all, it's up to the Board to decide whether to exercise that discretion. The Board has the option to allow us to raise that. The Board never said that it was improper to raise the battery issue at that time. But also, that was in response to a position that CENCO had raised in their opposition. Our position is that even without that third position, because the claim doesn't require that the alarm operate within that third position, the evidence was that if a user would... I'm sorry, if a theft would rip off a phone from the head unit and then release the head unit, even if you had that switched, even if it wasn't powered when the head unit is in a raised position, when the tether is retracted by the recoiler, then once the head unit reattaches to the base, it has the electrical connection, and it would sound an alarm. So because the claim... So even forgetting about a battery, the system would have still operated because a thief is going to rip off the head unit, and he's not going to continue to hold the head unit. So he's got to release it so that he or she can walk away. So that's our position with respect to Claim 5. Turning to Claims 8 through 12, the only limitation addressed by the board was Claim 8's limitation of the spring is remote from the connector in the third position of the head unit. The board correctly construed remote as requiring two structures to be spaced apart from each other. In reality, the only issue with respect to this remote issue was based on claim construction. CENCO's argument against the remote limitation was based solely on CENCO's proposed construction of remote. The board rejected CENCO's claim construction and adopted that which was proposed by MTI. Well, what was the difference, the distinction that you think is dispositive as to invalidity? Okay, so the distinction on that particular point is what CENCO argued is remote required a disconnection of both of the experts. The experts of both parties agreed that the spring and connector of Seabrook are capable of being spaced apart from each other in the third position of the head unit. And so the evidence is that Seabrook has that capability, the remote limitation, and it's all based on a capability. How the board seems to look at this, the board seems to look at claim H as being a method claim. Because the board talks about... Well, they called it a system. I don't think that that difference is going to make a difference between validity and invalidity. Do you? It's not that it makes a difference of validity or invalidity. It makes a difference as to what would be required for the prior art to disclose. Because it's a system claim for the prior art to invalidate, the prior art system has to have the capability. It doesn't need to disclose. It doesn't need to explicitly teach that capability as long as that capability is present in the prior art combination. And both of the experts agreed that that would be present in the prior art combination. And I see that my time is up, so I would like to reserve the rest of my time for rebuttal. All right. Let's hear from the other side, and we'll save the full rebuttal. We want to make sure we hear your arguments. Okay. Mr. Balson. Good morning, and may it please the court. As the court's aware, this is a split decision at the board. The board found six claims unpatentable, and SENCO disagreed with that part of the decision, but it didn't appeal or cross-appeal because it's mindful of the substantial evidence standard of review. Mr. Balson, this is Jeff Wallach. Just as a housekeeping matter, as I raised with your friend, is independent Claim 1 illustrative or representative? No, in the sense that the claims that are at issue in this appeal all have features that are distinct from Claim 1. Well, the elements of Claim 1 are included in the claims that are dependent on Claim 1. There's no problem with that, is there? No, there's no problem with that, but the particular elements like the remoteness and all of that, those are unique to, like, Claim 8, and the groove is unique to Claim 3, and the plunger aspect is unique to Claim 5, and those are what this appeal is being argued. Could you address Claim 5 and the battery issue, which the board did not address, and there was testimony that someone skilled in the art would know to add a battery so that in the third arm would be triggered? Right. Why wasn't there for the board not to address that possibility? Well, for the first part, no battery was asserted as the art that rendered this obvious in the petition. The battery came into the case when MTI ran into trouble in front of the board, and their expert came back and tried to backfill that testimony by adding the requirement of a battery that's nowhere. They did it to try to salvage functionality when they realized that the invention wouldn't function with just a plain combination of Seabrook and Rabinowitz. Okay, so it's responsive to an argument that you made, and the board didn't find that it was an improper argument. They just ignored it, right? Correct. So why should it be sended back to have the board consider that issue? Well, because I think, first of all, again, it wasn't asserted in the petition. And, I mean, if they have to add a battery at the end of the argument because they realized that what they did assert wasn't functional as they asserted it, it sounds like that's not obvious. What they asserted was not obvious. I mean, we are talking about what a person of ordinary skill in the art would find obvious, and if they've got to start adding stuff at the end, how is that obvious? If they keep having to modify what parts of the art they want to use. So I would not think you'd have to send it back for that sort of determination. Let's assume that the battery issue was properly before the board. Is there any reason that the board could permissibly ignore that? Well, if it's properly before the board, it would have to – it should take it into account. But if it's not properly before the board, they have discretion not to consider it. And these are not a novice board. They would exercise their discretion to consider it or not as they saw fit. So I just don't see how the addition of a battery at the 11th hour to try to salvage a functionality argument of the art that they asserted is somehow worthy of a remand on the issue of obviousness. If it was so obvious, why didn't they put it in their petition? Okay, please continue with your further argument. Okay. Relevant to Claims 8 and 12, the Claim 8, as the court knows, requires that the spring be remote from the connector in the third position of the head unit. But the board found that Seabrook doesn't teach a spring remote from the connector in the third position. Within no embodiment or discussion or drawing does Seabrook have that spring remote from the connector. So their argument on Claim 8 is forced to rely on expert testimony, basically two declarations discussing a hypothetical, and they would basically require that the device be rendered inoperable, almost broken, in order to keep the head unit apart from the spring. So the board, on all of these issues, their argument is basically that their experts said X and the board erred by not following what their experts said. But on all of these issues that are before the court, our experts said the opposite, or the evidence was such that the board, with its eyes and ears and brain, could see that in such a position something wouldn't function or there was some sort of contradictory evidence to everything that they're talking about. And so the board was not required to accept MTI's views. The main problem with them is that they've selected art that is basically inapt. It's out of the, not in the same area. Some of it predates smartphones. One of it is like this huge machine with spools and wires. And none of the combinations were obvious to combine. It was not a difficult decision for this board. And most of them wouldn't even function for their intended purpose. And substantial evidence backs every decision that their combinations would not function. And while complete functionality is not always required, if the primary reference is rendered inoperable or unsatisfactory for its intended purpose, well, that's a very, very strong indicia of non-obviousness. And so our position is that this board, on every one of these claims, there's evidence in the record to back the board's decision. The board's decision makes sense. And the board was not required to accept MTI's experts' advice. And our view is that substantial evidence backs all of these opinions. And if you just listen to these machinations that they have to go through to try to say that these are obvious, well, that's pretty indicative that maybe they're not obvious. So that's kind of our overall position. I can address any individual questions the court might have, but, you know, we're content to we've pointed out where in the record the evidence lies to support the rulings, and we believe they should be affirmed on that basis. Okay. Any questions from the panel? If not, we'll proceed with rebuttal. Okay. All right. Mr. Norman, are you ready? I am. Okay. You have your full rebuttal time. With respect to Claim A, the battery issue, is it the same as power cable in the prior? The power cable issue is a bit different. There is power that's coming up through a cable, but there is power that's coming up. I guess the battery is, in some respects, it is so that you don't necessarily need power coming up if you have the plunger switch. The whole point would be you could have a battery with a plunger switch in the head unit, so that if the phone is disconnected, the head unit itself would sound an alarm. So that's the issue with respect to the battery. Now, otherwise, the retractor cable would bring the head unit down, and at that point, once the retractor brings the head unit down, an alarm would sound based on the activation of that plunger switch. But if I can turn to Claim 8, the expert testimony of CENCO's expert and MTI's expert agreed that with the claim construction that MTI asserted for the remote limitation and which the board adopted, the Seabrook device had this capability. The problem is that there isn't any testimony that there was a motivation to do that. But that's not an issue that the board decided. The board did not find a lack of motivation. And also, CENCO is saying that this would somehow break the system. But to operate it in CENCO, it doesn't require breaking Seabrook, and the board never found that. It requires a disconnection, because that's what the claim required. The claim says wherein the head unit is disconnected from a post, the connector, and the first cable in a third position. So in the Seabrook device, it still requires a disconnection, because it has to be a disconnection to be in the third position. So there's no dispute that the spring can be spaced apart from the connector, and that is, in fact, shown in Figure 7A of Seabrook. Again, these are fact issues, though, that the board needs to consider in the first place. The board has an obligation to address the arguments the parties presented to it, and the board did not do so. And I think that's all I have. Okay, anything further from the panel? Okay, in that case, with thanks to counsel, the case is submitted.